IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ANTOINETTE DJONRET, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civil Action No. 2:14cv42-MHT |
| | ) (WO) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This case is before the court on a *pro se* motion by Antoinette Djonret ("Djonret") to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. *See* Doc. Nos. 4 & 11.[1]

**I.   INTRODUCTION**

On October 31, 2012, Djonret pled guilty under a plea agreement to three counts in two indictments: (1) aiding the filing of a false tax return, in violation of 26 U.S.C. § 7206(2); (2) conspiracy to defraud the United States, in violation of 18 U.S.C. § 286; and (3) aggravated identity theft, in violation of 18 U.S.C. § 1028A.[2] The plea agreement contained a waiver provision whereby Djonret waived her right to appeal or attack collaterally her convictions and sentence except on grounds of ineffective assistance of counsel and prosecutorial misconduct. Doc. No. 22-4 at 9-10. Following a sentencing hearing on February 8, 2013, the district court sentenced Djonret to 144 months in prison, comprising concurrent terms of 36 months for aiding the filing

---

[1] References to document numbers ("Doc. No.") are to those assigned by the Clerk of Court to pleadings docketed in this civil action. All page references are to those assigned by CM/ECF.

[2] The two indictments were returned in Case Nos. 2:12cr57-MHT & 2:12cr59-MHT. Djonret's guilty plea was entered in a single proceeding (Doc. No. 22-9), and the universal plea agreement covered both cases. She was sentenced in a consolidated proceeding.

of a false tax return and 120 months for conspiracy to defraud the United States and a consecutive term of 24 months for aggravated identity theft.  *See* Doc. Nos. 22-6 & 22-7.  Djonret did not appeal.

On February 6, 2014, Djonret filed this § 2255 motion presenting claims that her trial counsel rendered ineffective assistance by

1) failing to object to the loss amount attributed to her at sentencing;

2) failing to object to the six-level victim enhancement at sentencing;

3) failing to object to the four-level leadership enhancement at sentencing;

4) failing to negotiate the terms of her plea agreement effectively;

5) failing to investigate and research the case adequately, resulting in counsel's (a) giving her erroneous advice about her sentencing exposure and (b) failing to secure an expert witness to challenge the loss amount attributed to her; and

6) failing to object to her sentence as "substantively unreasonable."

Doc. No. 4 at 4-13; Doc. No. 11 at 3-16.

The Government maintains that all of Djonret's claims lack merit and should therefore be denied.  Doc. No. 22.  After consideration of the parties' submissions, the record, and the relevant law, the court finds that the § 2255 motion should be denied without an evidentiary hearing.  Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*.

## II.   DISCUSSION

### A.   General Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments under 28 U.S.C. § 2255 are limited.  A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is

2

otherwise subject to collateral attack. *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

### B. Claims of Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel must be evaluated against the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 689. Second, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. *See Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable. *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted). The court will "avoid second-guessing counsel's performance: It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id*. (internal quotation marks and brackets omitted). "Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." *Id*.

As noted, under the prejudice component of Strickland, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability

3

sufficient to undermine confidence in the outcome." *Id*. The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id*. at 372.

Unless a petitioner satisfies the showings required on both parts of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. Id. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

**1. Counsel's Failure to Object to Attributed Loss**

Djonret contends that her trial counsel, Susan G. James, rendered her ineffective assistance of counsel by failing to object to the methodology used by the Government to calculate the loss amount attributed to her at sentencing. Doc. No. 4 at 4; Doc. No. 11 at 6-11.

Djonret was charged in two separate cases, one stemming from her role as a tax preparer for the Montgomery branch of Bruce King's Premier Tax ("the King Case," Case No 2:12cr57-MHT), and the other stemming from her scheme to defraud the United States, which she engaged in after leaving employment with Premier Tax, by filing false refund claims using stolen identities ("the Identity Theft Scheme," Case No. 2:12cr59-MHT). Djonret's specific arguments in her § 2255 motion go only to the methodology used to calculate loss in the King Case and to her claim that James was ineffective for failing to object to that methodology. *See* Doc. No. 11 at 6-11.

Under § 2B1.1(b)(1) of the Sentencing Guidelines, the offense level for a defendant convicted of certain economic fraud offenses is subject to a specific-offense-characteristic enhancement if the loss from the criminal conduct exceeded $5,000, with the extent of the enhancement determined by the amount of the loss. U.S.S.G. § 2B1.1(b)(1). Application notes clarify that the "loss is the greater of actual loss or intended loss."[3] U.S.S.G. § 2B1.1, cmt. n.3(A). In the context of fraud offenses, sentencing based on intended loss is appropriate even where no actual loss occurred. *United States v. Menichino*, 989 F.2d 438, 442 (11th Cir. 1993); *see, e.g., United States v. Willis*, 560 F.3d 1246, 1250-51 (11th Cir. 2011) (finding that intended loss included defendant's fraudulent claims to FEMA not paid).

Here, consistent with the Presentence Investigation Report ("PSI") and the "Government's Provisions" section of the written plea agreement, the district court found that the cumulative loss attributable to Djonret for her criminal conduct – i.e., combining the loss in the King Case with the loss in the Identify Theft Scheme – was between $1,000,000 and $2,500,000.[4] *See* PSI at 9, ¶ 31; Doc. No. 22-4 at 6; Doc. No. 22-6 at 82-83. Based on this finding, and applying § 2B1.1(b)(1), the court imposed a 16-level enhancement to Djonret's offense level. *See* U.S.S.G. § 2B1.1(b)(1)(I), (J) (providing for specific-offense-characteristic enhancement of 16 levels where the loss was more than $1,000,000 but less than $2,500,000).

---

[3] "Actual loss" is defined as "the reasonably foreseeable pecuniary harm that resulted from the offense." U.S.S.G. § 2B1.1, cmt. n.3(A)(i). "Intended loss," on the other hand, means "the pecuniary harm that was intended to result from the offense," including pecuniary harm "that would have been impossible or unlikely to occur." *Id.*, cmt. n.3(A)(ii).

[4] As indicated below in this Recommendation, the plea agreement contained a stipulation that the loss amount attributable to Djonret for her criminal conduct in the Identity Theft Scheme *alone* was between $1,000,000 and $2,500,000. Doc. No. 22-4 at 5.

*Attributed Loss in the King Case*

In reaching the figure accepted by the court regarding the King Case, and as set out in the PSI, the Government identified approximately 97 "highly suspicious" tax returns among the 120 filed by Djonret for the 2007 tax year. *See* PSI at 5-6, ¶¶ 10-11. The Government then added the values of these returns, calculating the loss that would have resulted had the offense been successfully completed. *Id*. For the relevant period, 51 highly suspicious returns involving "HSH" income (household income) were filed, claiming a total of $218,108 in refunds. *Id*. Two highly suspicious Schedule C returns without W-2s were filed, claiming a total of $5,858 in refunds. *Id*. Forty-four highly suspicious Schedule C income returns with W-2s also were filed, claiming a total of $244,0640 in refunds. *Id*. These amounts were added to derive a total of $468,026 in refunds. Then, applying the "ultra conservative approach" to calculating tax loss, *see United States v. Jordan*, 374 Fed. App'x 3, 6-7 (11th Cir. 2010), by estimating that only half of the highly suspicious tax returns filed by Djonret were indeed fraudulent, the Government calculated Djonret's attributable loss in the King Case to be $243,013 (half of $468,026). *See* PSI at 6, ¶ 11.

Djonret maintains that her counsel James should have objected to the methodology used by the Government to calculate the loss amount attributed to her in the King Case. She contends that James should have argued that the Government was obligated to offer into evidence at sentencing each of the 97 "highly suspicious" tax returns she filed in the King Case, and also had to present statements from each of the 97 clients averring that each highly suspicious tax return was in fact fraudulent. Doc. No. 11 at 8. However, relevant conduct under the Sentencing Guidelines – such as attributed loss – needs only to be proven by a preponderance of the evidence at sentencing. *See, e.g., United States v. Hamaker*, 455 F.3d 1316, 1336 (11th Cir. 2006). Moreover, the method of loss calculation used by the Government to estimate loss in the King

Case – the "ultra conservative approach" – was endorsed by the Eleventh Circuit in *Jordan*, *supra*, 374 Fed. App'x at 6-7. In *Jordan*, an IRS special agent testified that most of the tax returns filed by the defendant's tax preparation business were suspected of containing fraudulent refund claims. *See* 374 Fed. App'x at 6. The agent stated that he took an "ultra conservative approach" and counted only half of those tax returns in estimating the intended loss of the fraudulent tax refund scheme. *Id*. The Eleventh Circuit held that the district court properly credited the agent's testimony in determining loss. *Id*. at 7. *See also United States v. Moss*, 543 Fed. App'x 959, 963 (11th Cir. 2013) (approving similar approach to estimating loss). Furthermore, the Eleventh Circuit has repeatedly recognized that the Sentencing Guidelines do not require the Government to establish the amount of loss with precision; the Government's estimate of loss need only be reasonable. *See, e.g., United States v. Renick*, 273 F.3d 1009, 1025 (11th Cir. 2011); *Jordan,* 374 Fed. App'x at 7. Djonret does not demonstrate that the Government's calculation of loss in the King Case was unreasonable, nor does she identify a plausible argument or evidence that James might have presented with a reasonable likelihood of changing the loss amount attributed to her.

*Attributed Loss in the Identity Theft Scheme*

In addition, the calculation of loss in the King Case did not affect Djonret's sentence. In presenting this claim in her § 2255 motion, Djonret does not dispute that the Identity Theft Scheme she led from October 2009 to February 2012 involved the use of stolen identities to file 1,314 fraudulent tax returns claiming $1,732,774 in tax refunds. *See* PSI at 7-8, ¶ 23; Doc. No. 22-4 at 5-6. The fraudulence of those 1,314 tax returns – and the total dollar amount of the fraudulently claimed refunds – in the Identity Theft Scheme is not seriously in question. In her plea agreement, Djonret stipulated that the loss amount attributable to her for her criminal conduct in the Identity

Theft Scheme alone was between $1,000,000 and $2,500,000.[5] Doc. No. 22-4 at 5; *see also id.* at 14. Even excluding all loss associated with the King Case, the $1,732,774 in loss attributable to Djonret in the Identity Theft Scheme was sufficient to support the 16-level enhancement applied to her under U.S.S.G. § 2B1.1(b)(1), as that amount was still more than $1,000,000 but less than $2,500,000.[6]

Djonret proves no deficient performance in James's failure to object to the method used to calculate the loss amount attributed to her in the King Case, nor does she demonstrate any prejudice resulting from James's failure to object. Consequently, she is not entitled to relief based on this claim of ineffective assistance of counsel.

**2. Failure to Object to Six-Level Victim Enhancement**

---

[5] To the extent that Djonret, in presenting this claim, may arguably also be challenging the loss amount attributed to her for the Identity Theft Scheme, the Government correctly observes that her arguments are simply too conclusory in nature to warrant relief or a hearing. Doc. No. 22 at 9-10. Further, the Government correctly notes that any claim by Djonret challenging the loss amount attributed to her for the Identity Theft Scheme would be flatly contradictory to her admissions in the plea agreement and at the change of plea hearing. *Id*.

[6] In an affidavit filed with the court, James notes:

> As relates to Djonret's argument over methodology, it should be noted this method was used in the Premier ["the King Case"] calculations. It was not used in her own tax case ["the Identity Theft Scheme"] because the Government knew the number of fraudulent returns. If the ["ultra conservative"] methodology approach had been used (using half of the loss amount of $1,966,787), the amount would have been slightly below the floor amount. This would have produced guidelines of 32 minus 3-level, 29: 87 to 108 months. Absent the negotiated plea she would have been exposed to 18 additional years on the aggravated identity theft cases and no three-level adjustment for acceptance of responsibility. [Djonret] received far more from the benefit of her plea agreement than she would have received from the two-level drop on the contested amount.

Doc. No. 20-1 at 6.

Djonret contends that James rendered her ineffective assistance of counsel by failing to object to the six-level victim enhancement at sentencing. Doc. No. 4 at 5; Doc. No. 11 at 11-13.

Section 2B1.1(b)(2)(C) of the Sentencing Guidelines calls for a six-level specific offense characteristic enhancement for certain economic fraud offenses involving 250 or more victims. *See* U.S.S.G. § 2B1.1(b)(2)(C). Application Note 4(E) to § 2B1.1(b)(2), which became effective in November 2009, broadens the definition of "victim" for economic fraud crimes involving identify theft to provide that, in such cases, "'victim' means (i) ['any person who sustained any part of the actual loss,' U.S.S.G. § 2B1.1 cmt. n.1]; or (ii) any individual whose means of identification was used unlawfully or without authority." U.S.S.G. § 2B 1.1 cmt. n.4(E) (emphasis added). Prior to implementation of Application Note 4(E), a "victim" for purposes of § 2B1.1(b)(2) must have sustained an economic loss or bodily injury. *See* U.S.S.G. § 2B1.1 cmt. n.1(A) & (B) (2008).

Here, the district court applied the six-level § 2B1.1(b)(2)(C) enhancement to Djonret, adopting the PSI's finding that Djonret's criminal conduct in the Identity Theft Scheme involved 250 or more victims because she used stolen identities to file 1,314 fraudulent tax returns in that scheme. *See* PSI at 9, ¶33; Doc. No. 22-4 at 5.

In her § 2255 motion, Djonret seems to contend that James should have argued that the Government had to present testimony at sentencing from each of the 1,314 individuals whose identity she stole or else obtain 1,314 certified statements from those individuals. Doc. No. 11 at 11-12. However, as the Government notes (Doc. 22 at 11), there is no reason the Government would be required to obtain statements or testimony from all 1,314 identity-theft victims, especially given Djonret's stipulation in her plea agreement. As noted above, relevant conduct under the Sentencing Guidelines (here, the number of victims) need only be proven by a

9

preponderance of the evidence at sentencing. *Hamaker*, 455 F.3d at 1336. Nor does it matter, as the Government correctly observes, that the indictment does not list each of the more than 1,000 victims. Relevant conduct may include uncharged conduct, and even acquitted conduct may serve as a basis for a sentencing enhancement. *Id*.

Moreover, Djonret's instant challenge to the number of her victims under § 2B1.1(b)(2) runs counter to her stipulations in her plea agreement and her conduct admissions when pleading guilty. Her counsel may reasonably have believed that the plea agreement and the Government's willingness to recommend a sentence reduction under U.S.S.G. § 3E1.1(a) & (b) depended on Djonret's full acceptance of responsibility for her actions and her expressions of contrition. A challenge to the victim total which put the Government to the task of presenting additional evidence regarding the number of Djonret's victims would have conflicted with the notion that Djonret had accepted such responsibility. James recognizes this in her affidavit filed with the court:

> Counsel understood it was possible that the objections Djonret had insisted upon could have been viewed as a refusal to accept responsibility for her criminal conduct, particularly as related to the objections which were contrary to the factual basis in her knowing and voluntary plea of guilty.

Doc. No. 20-1 at 6.

Strategy choices by counsel are entitled to considerable deference. *Chandler v. United States*, 218 F.3d 1305, 1314 n.14 (11th Cir. 2000). Djonret establishes neither deficient performance by James nor resulting prejudice. Therefore, she is not entitled to relief on this claim of ineffective assistance of counsel.

### 3. Failure to Object to Four-Level Leadership Enhancement

Djonret next claims that James rendered her ineffective assistance of counsel by failing to object to the four-level enhancement she received under U.S.S.G. § 3B1.1(a) for her leadership role in the Identity Theft Scheme. Doc. No. 11 at 12-13. This claim is baseless, as the record

shows James objected to this enhancement. *See* PSI at 18; Doc. No. 22-6 at 12-13; Doc. No. 22-7 at 3-39. The district court overruled James's objection. Doc. No. 22-7 at 39-40.

Assuming that Djonret's argument here is that James, in objecting, did not adequately oppose the four-level enhancement, Djonret's claim still fails. Under § 3B1.1(a), the sentencing court must apply a four-level enhancement "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). There was ample evidence that Djonret had a leadership role in the Identity Theft Scheme. She led an extensive operation involving more than five participants, recruiting and overseeing the criminal activities of several individuals. *See, e.g.*, PSI at 6-7, ¶¶ 13-22. Over the course of three years, she provided money to those individuals to purchase debit cards to use in the scheme and viewed the individuals as "employees" on her payroll. PSI at 6, ¶ 15. *See United States v. Ramirez*, 426 F.3d 1344, 1355 (11th Cir. 2005); U.S.S.G. § 3B1.1 cmt. n.4. Djonret identifies no particular argument or evidence that James could have, but did not, present in opposition to application of the four-level leadership enhancement. Having proved neither deficient performance by James nor resulting prejudice under the standard in *Strickland*, she is entitled to no relief on this claim.

### 4.   Failure to Negotiate Terms of Plea Agreement Effectively

Djonret asserts, in a cursory manner, that James rendered ineffective assistance of counsel during plea negotiations by "fail[ing] to provide any real benefits to the defendant because any benefit gained by pleading [was] subsequently negated by relevant conduct enhancements." Doc. No. 4 at 7; Doc. No. 11 at 13.

In her affidavit filed with the court, James states:

> Djonret, being astute and practical, realized her chance of winning her tax case was unlikely and agreed to try to help herself by doing a proffer with the

11

>   Government.  This was her best solution to a bad situation.  Unfortunately, the Government felt that she withheld information and was misleading.  The Government did not deem her cooperation credible or substantial and refused to file a U.S.S.G. § 5K1.1 motion for a downward departure from the guidelines.
>
>   This left her with the hope of a downward variance from the guidelines by the Sentencing Judge.  He refused and gave her a guideline sentence.  The Judge indicated that he was troubled by her involvement in a separate tax fraud of her own (2:12cr59) ["the Identify Theft Scheme"] after having been questioned years earlier about the investigation of Bruce King and his employees in a tax fraud (2:12cr57) ["the King Case"].
>
>   Despite the lengthy guideline sentence she received, she did receive three levels for acceptance of responsibility.  Further, she was charged in 2:12cr59 among other things with seven separate counts of aggravat[ed] identify theft and in 2:12cr57 with two counts of aggravated identity theft.  If convicted on all, she faced an additional 18 years which could have been imposed consecutively to the recommended guideline sentence.  The benefit of her plea on this point was a plea to two rather than nine counts of aggravated identity theft.
>
>   ….
>
>   Djonret received substantial benefits pursuant to her plea as noted previously.  She was guilty and the evidence was overwhelming. She told the Government she was guilty during her proffer sessions which she requested and participated in.  Counsel was not ineffective in this regard or any others as relates to the representation of Djonret.

Doc. No. 20-1 at 5-8.

As James's affidavit reflects, Djonret's assertion that the benefits of pleading guilty were negated by the relevant conduct enhancements is not supported by the record.  Had she gone to trial and been convicted, Djonret almost certainly would have received a longer sentence than the one imposed pursuant to her guilty plea.[7]  Moreover, she makes no showing of any better plea deal

---

[7] As the Government observes in addressing Djonret's claim:

>   Djonret … ignores the fact that her attorney secured a valuable concession from the government when it agreed to dismiss the remaining charges against her, including aggravated identity theft charges that carried the threat of an additional 16 years in

12

which James might reasonably have been expected to negotiate on her behalf. Djonret demonstrates neither deficient performance by James nor resulting prejudice. Therefore, she is entitled to no relief on this claim of ineffective assistance of counsel.

**5.   Failure to Investigate and Research Case Adequately**

Djonret contends that James did not adequately investigate and research her case, resulting in James' (a) giving her erroneous advice about her sentencing exposure and (b) failing to secure an expert witness to challenge the loss amount attributed to her. Doc. No. 4 at 8; Doc. No. 11 at 13-14.

a.   Erroneous Advice Regarding Sentencing Exposure

According to Djonret, James told her that if she pled guilty, her maximum time served would be 60 months, plus an additional 24 months if the Government refused to drop the identity-theft charge. Doc. No. 11 at 13-14. Djonret maintains that if James had correctly informed her of the maximum penalty she faced, she would not have pled guilty and would instead have insisted on going to trial. *Id*. at 14.

---

prison. *See* PSR ¶ 70. While some of the sentences may have run concurrently, Djonret faced aggravated identity theft charges in two separate cases and was able to plead to such charges in only one case. *See* Plea Agmt. ¶ 4. If she had not resolved the two cases at once, she probably would have faced two sentencing hearings and the law would have required that the different § 1028A [aggravated identity theft] counts in each case be consecutive to any other counts, including each other, as they would be imposed at different times. *See* 18 U.S.C. § 1028A(b)(4). In other words, under her plea agreement Djonret received a mandatory 2-year, consecutive, sentence on top of the 10-year sentence the judge imposed for non-§ 1028A counts. Without the plea agreement, after a conviction, Djonret would have faced a mandatory 4 years of consecutive sentences, on top of whatever sentence the judge imposed on other counts, as well as losing the acceptance of responsibility reduction.

Doc. No. 22 at 13.

> In her affidavit filed with this court, James states:
>
> > Counsel never told Djonret that the maximum sentence would be 60 months, plus an additional 24 for the aggravated identity theft. That statement is belied by the terms of the plea agreement that Djonret signed and acknowledged under oath that she understood.
> >
> > Contrary to Djonret's assertion that she would have insisted on a trial, she repeatedly said she wanted to get this behind her, get her sister a good deal, and take responsibility for what she had done.

Doc. No. 20-1 at 8.

The *Strickland* standard for evaluating claims of ineffective assistance of counsel was held applicable to guilty pleas in *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). A petitioner alleging ineffective assistance in this context must establish that counsel's performance was deficient (i.e., professionally unreasonable) and that counsel's deficient performance "affected the outcome of the plea process." *Hill*, 474 U.S. at 59. To establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would ... have pleaded [not] guilty and would ... have insisted on going to trial." *Id*. A mere allegation by a defendant that he would have insisted on going to trial but for counsel's errors is insufficient to establish prejudice; rather, the court will look to the factual circumstances surrounding the plea to determine whether the defendant would have proceeded to trial. *See Miller v. Champion*, 262 F.3d 1066, 1072 (10th Cir. 2001); *United States v. Arvantis*, 902 F.2d 489, 494 (7th Cir. 1990); *see also Holmes v. United States*, 876 F.2d 1545 (11th Cir. 1989) (*Hill* does not require a hearing merely because a defendant asserts a claim of ineffectiveness of counsel when the record affirmatively contradicts the allegations).

The record does not support a claim that Djonret was induced to plead guilty by erroneous assurances from James regarding her sentence. The transcript of the change of plea hearing reflects that the magistrate judge correctly advised Djonret of the statutory maximum sentences applicable

to her offenses and advised her that an identity theft conviction carries a mandatory term of two years to run consecutive to any other term of imprisonment. Doc. No. 22-9 at 6-7. The written plea agreement correctly set forth this same information. Doc. No. 22-4 at 2-3. The plea agreement contained no provision indicating a specific sentence to be recommended or imposed. Djonret stated under oath at the change of plea hearing that she and her counsel had reviewed and discussed the plea agreement and that she understood its terms. Doc. No. 22-9 at 4-5. Djonret also affirmed during the change of plea hearing that, other than the terms of the plea agreement, no one had made any promises or assurances to her to get her to plead guilty. *Id*. at 5-6. She further affirmed that she and her attorney had discussed how the advisory sentencing guidelines would apply in her case. *Id*. at 8. She acknowledged that she understood that the terms of the plea agreement were merely recommendations, and that the court could reject the recommendations without permitting her to withdraw her guilty plea and impose a sentence more severe than she might anticipate. *Id*. at 5. Djonret also acknowledged that she understood her sentence would be determined by a combination of advisory sentencing guidelines, possible authorized departures from those guidelines, and other statutory factors and that the sentence ultimately imposed might differ from any estimate made by her counsel. *Id*. at 8-9. Finally, the written plea agreement signed by Djonret contained a provision whereby Djonret affirmed that she understood that her offense level and criminal history category, as calculated by the probation officer and determined by the court, might differ from any estimate made by her counsel. *Id*. at 18-19.

An inaccurate prediction about sentencing alone will generally not be sufficient to sustain a claim of ineffective assistance of counsel. *See United States v. Pease*, 240 F.3d 938, 940-41 (11th Cir. 2001) (rejecting ineffective assistance of counsel claim where the court warned the defendant during the plea colloquy that he may face a sentence higher than anticipated and

informed defendant of statutory minimum and maximum). "[A] defendant [who] pleads guilty relying upon his counsel's best professional judgment ... cannot later argue that his plea was due to coercion by counsel." *United States v. Lagrone*, 727 F.2d 1037, 1038 (11th Cir. 1984).

Here, the plea agreement did not mention a specific sentence, other than to note the statutory maximums and how the sentence for identity theft would be required to run consecutively. At the change of plea colloquy, the magistrate judge correctly informed Djonret of these matters. Djonret also affirmed under oath that she and her counsel had reviewed and discussed the plea agreement and that she understood its terms. Djonret's sworn statements in open court that her guilty plea had not been induced by any promises or assurances outside the plea agreement – and her acknowledgment that she understood her sentence might differ from any estimates made by her counsel and could be more severe than she anticipated – undermine her present assertion that her guilty plea was induced by erroneous assurances from James. "[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988). "There is a strong presumption that the statements made during the [guilty plea] colloquy are true." *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). Djonret fails to overcome that presumption here. Consequently, she is not entitled to relief based on this claim of ineffective assistance of counsel.

      b.  <u>Failure to Secure Expert Witness</u>

Djonret contends that James was ineffective in failing to secure an expert witness to challenge the loss amount attributed to her. Doc. No. 11 at 14. However, Djonret stipulated to the loss amount in her plea agreement. Moreover, she wholly fails to demonstrate that an expert witness obtained by the defense would have succeeded in challenging the loss amount attributed

to her.  Instead, she speculates that such an expert might have calculated a loss amount different from that calculated by the Government (and stipulated to in the plea agreement).  *See Earhart v. Johnson*, 132 F.3d 1062, 1068 (5th Cir. 1998) (petitioner's failure to identify an expert whose testimony would have altered the outcome of his trial was fatal to his habeas claim that counsel was ineffective for failing to request assistance of defense expert).  Djonret shows neither deficient performance by James nor resulting prejudice.  Therefore, she is not entitled to relief on this claim.

**6.   Failure to Object to Sentence as Substantively Unreasonable**

Lastly, Djonret contends that James rendered ineffective assistance by failing to object to her sentence as "substantively unreasonable."  No. 11 at 14-16.

A defendant's ultimate sentence is reviewed for reasonableness in light of the factors set forth in 18 U.S.C. § 3553(a).[8]  *See United States v. Winingear*, 422 F.3d 1241, 1246 (11th Cir. 2005).  "[T]he party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in the light of both [the] record and the factors in section 3553(a)."  *United States v. Thomas*, 446 F.3d 1348, 1351 (11th Cir. 2006) (internal quotation omitted).

Djonret suggests there was an unwarranted disparity between her sentence and those of two of her codefendants, Bruce King and Lea'Tice Phillips, who received lesser sentences.  Doc. No. 11 at 16.  Under § 3553(a)(6), a district court should "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C.

---

[8] The § 3553(a) factors include (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for the sentence imposed to afford adequate deterrence; (4) the need to protect the public; (5) the need to provide the defendant with educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) the pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims.

§ 3553(a)(6).  In considering disproportionality, it is important to compare defendants who are similarly situated.  *See United States v. Docampo*, 573 F.3d 1091, 1101 (11th Cir. 2009).  Here, King and Phillips were less culpable than Djonret, who was indisputably the leader of the Identity Theft Scheme. The sentencing transcript in Djonret's case also reflects that the district court imposed a harsher sentence on Djonret because she continued to engage in extensive tax fraud (i.e., the Identity Theft Scheme) well after being interviewed about her involvement in the fraud by her former employer at Bruce King's Premier Tax.  *See* Doc. Nos. 22-6 & 22-7.

The district court correctly calculated Djonret's advisory guideline range, heard the arguments of the parties, and indicated that it had considered the § 3553(a) factors. Doc. No. 22-6 at 83.  Based on the totality of the circumstances, the undersigned cannot conclude that Djonret's sentence of 144 months in prison is substantively unreasonable.  Therefore, Djonret establishes neither deficient performance by James nor resulting prejudice from James' failure to object to the sentence on this ground.  Djonret is not entitled to relief on this claim of ineffective assistance of counsel.

### III.   CONCLUSION

It is the RECOMMENDATION of the Magistrate Judge that Djonret's § 2255 motion be DENIED and this case be DISMISSED with prejudice.

It is further ORDERED that the parties shall file any objections to this Recommendation or before **May 6, 2016**.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) will bar a party from a *de novo* determination by the District Court of legal and factual issues covered in

the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1; *see Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE, this the 22nd day of April, 2016.

/s/ Susan Russ Walker
Susan Russ Walker
Chief United States Magistrate Judge